**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

ZACHARIAH KINSAUL and
ALETA KINSAUL, in their
capacity as co-Personal
Representatives of the Estate of
JAMES MICHAEL KINSAUL

        Plaintiffs,

v.                                                                  CASE NO.:   4:08-CV-159-SPM/WCS

MORRIS YOUNG, in his official
capacity as SHERIFF, GADSDEN
COUNTY, FLORIDA, ERIC MCMILLON,
individually, and JOZELL MCWHITE,
individually,

        Defendants.
_____/

## DEFENDANTS' MOTION FOR SUMMARY FINAL JUDGMENT
### (CASE DISPOSITIVE MOTION)

Defendants, Morris Young, in his official capacity as Sheriff in and for Gadsden County, Florida, Eric McMillon, individually, and Jozell McWhite, individually, by and through their undersigned attorneys, pursuant to Rule 56(b) of the Federal Rules of Civil Procedure and in the manner required by Local Rule 56.1(A) each move for the entry of Summary Final Judgment. There are no disputed issues of fact material to the resolution of the case as a matter of law. On those undisputed material facts, movants Sheriff Young, McMillon and McWhite are entitled to judgment as a matter of law. Each so moves and,

as required by Local Rule 56.1 and 7.1(A), incorporates their Statement of Material Facts and Memorandum of Law.

## STATEMENT OF FACTS

On August 5, 2006, tragically, James Kinsaul committed suicide while detained at the Gadsden County Jail only five hours and thirty minutes after arriving there. Plaintiff alleges and Defendants accept the representation in the Complaint at Paragraphs 13 and 16 that he was delivered by the Havana Police Department at 6:05 a.m. (Depo. of McMillon, p. 9) and that he was discovered at 11:35 a.m. that day having used his leather belt to asphyxiate himself using his own body weight to cut off air flow to his lungs.

Earlier that day, Officer Shawn Pye of the Havana Police Department arrested Mr. Kinsaul for malicious mischief when he damaged the vehicle of the Havana Police Chief. When Pye brought Mr. Kinsaul to the jail, Kinsaul, though not falling down drunk, was under the influence of alcohol. (Depo. of Pye, p.29-30) Initially McMillon put Kinsaul in holding cell 150 where he got into an argument with a fellow detainee named Zale Baker. (Depo. of McMillon p. 13-14). McMillon moved Kinsaul to a different cell where Kinsaul could be secured, and could get some sleep to "sleep some of his intoxication away." (Depo. of McMillon p. 15).

Kinsaul was not booked at this time. Personal items, such as his belt, were not removed. (Depo. of McMillon, p. 15). The initial booking evaluation and screening was postponed except to indicate that Kinsaul was under the influence of alcohol. (Depo. of McMillon, p. 27). McMillon did not even prepare a property receipt (nor take his property) because his review of the charges suggested he would be bonding out quickly. (Depo. of

McMillon, p. 28-29). McMillon's shift ended at 7:00 a.m. (Depo. of McMillon, p. 8) and he went home. (Depo. of McMillon, p. 13).

At 6:45, McMillon checked on Kinsaul and observed him to be asleep with a blanket over his head. McMillon wrote "at any time did Kinsaul threaten his life to me." (Exhibit 17, to McMillons depo.). Since then by Affidavit, Deputy McMillon has clarified that his intended meaning by the remark was that "not at anytime did Kinsaul threaten to take his own life." (Exhibit 1 - Affidavit of McMillon) For this involvement over a 55 minute period, McMillon is sued personally.

For the next three hours and two minutes until 9:47 a.m., which was about sixty percent of the whole time he was at the Gadsden County Sheriff's Office, Mr. Kinsaul slept. He was awakened in his cell by co-defendant Jozelle McWhite. He was then taken to First Appearances before Circuit Judge Hankinson. At that hearing, Judge Hankinson initiated a hold for violations of probation. Mr. Kinsaul would not be posting bond and going home that morning as expected. (Depo. of McWhite, p. 48- Exhibit 13, Exhibit 15) Kinsaul returned to the jail at approximately 11:14 a.m. (Depo. of McWhite, p. 70).

McWhite gave phone calls to all those attending first appearances, including Mr. Kinsaul. She described his behavior during the phone call as "normal" and she recalls him encouraging whoever was on the other end of the receiver to come see him. He asked to use the restroom, was permitted to do so, and responded "yes" when asked if he wanted to eat. He inquired whether there was anything to drink. (Depo. of McWhite, p. 70). Five minutes later, when McWhite returned to the cell to complete booking of Mr. Kinsaul, she saw Kinsaul had used his belt to "hang" himself. (Depo. of McWhite - Exhibit 11). Heroic

3

efforts to save the life of Mr. Kinsaul began immediately. (Depo. of McWhite, p. 83-87). She too is sued individually and personally.

No person placed any defendant on notice that Plaintiff was likely to harm or attempt to harm himself. In addition to the reporting by the Defendants that Kinsaul never hinted at his intentions, Kinsaul never said he would harm himself to Havana Police or his family members. (Depo. of Officer Pye, p.36-37). Zachariah Kinsaul has never thought his brother was suicidal, and was unaware of any previous suicide attempts. (Depo. of Zachariah Kinsaul, p. 48). Though his brother James had reported he would never go back to jail, Zachariah Kinsaul did not pass that information along to officials at the Gadsden County Sheriff's Office and he was shocked by the suicide. (Depo. of Zachariah Kinsaul, p. 55).

His sister Aleta, the co-personal representative of the estate, suspected that her brother might have been a suicide risk and may have attempted suicide one time some thirty years before, (Depo. of Aleta Kinsaul, p. 20,24) but she did not tell anyone at the Gadsden County Sheriff's Office about her concerns or suspicions. (Depo. of Aleta Kinsaul, p. 25).

## **MEMORANDUM OF LAW**

Plaintiff brings three causes of action against the Defendants. Count II alleges civil rights violations against all Defendants. It is sandwiched by Counts I and III. Count I seeks to impose liability solely against Sheriff Young for "Negligence." Count I alleges Sheriff Young is derivatively liable for the negligence of his employees and agents. Count III is more of a direct action against the Sheriff for his own "negligence" in purportedly failing to

train and supervise his jail employees.  It is only Count II which confers subject matter jurisdiction on this Court and will be addressed first.

## FEDERAL CIVIL RIGHTS CLAIMS
### (COUNT II)

Plaintiff seeks to impose liability on the Sheriff and two of his correctional officers, McMillon and McWhite.  In order to impose constitutional liability on the Sheriff for self-harm, the Plaintiff must plead and prove the following two elements:

a) That actions or inactions by the Defendant evinced, not mere negligence, but deliberate indifference to a known risk of suicide;

b) That a custom, policy or practice that evinced that deliberate indifference to a known risk of suicide was the moving force, or cause in fact, of the death.

Defendant Young has raised the following two significant defenses:

### *SECOND AFFIRMATIVE DEFENSE*

*"As a Second and separate Affirmative Defense, specifically directed to Count II of the Complaint, the allegations as described in the Complaint could reflect at worst, mere negligence, and as such, Plaintiff's claim is not cognizable or compensable under Title 42 U.S.C. §1983."*

### *TENTH AFFIRMATIVE DEFENSE*

*"As a Tenth and separate Affirmative Defense, the Complaint fails to state a cause of action in that there is no allegation that any defendant was aware in advance of Plaintiff's decedent's suicidal tendencies and, in the absence of notice, no duty to prevent a suicide exists."*[1]

The individual Defendants (McMillon and McWhite) raised this additional relevant affirmative defense.

---

[1] This was raised as McMillon's and McWhite's Eighth Affirmative Defense as well.

5

## SECOND AFFIRMATIVE DEFENSE

*"As a Second and separate Affirmative Defense, specifically directed to Count II of the Complaint, neither McMillon nor McWhite acted in a manner which was contrary to clearly established law which either would be expected to know or apply under the circumstances. Accordingly, both McMillon and McWhite are each afforded the defense of qualified immunity from suit."*

Young respectfully suggests that the undisputed material facts do not, as a matter of law, allow for an inference to be drawn that the Sheriff, through his deputies, or the deputies themselves, did anything which evinced a deliberate indifference to the risk of suicide. Therefore, inquiry into the question of causation by policy, custom, or practice need not be made. This is because if a person has suffered no constitutional injury at the hands of individual police officers, whether departmental regulations may have authorized such conduct is quite beside the point. City of Los Angeles v. Heller, *475 U.S. 796, 89 L. Ed 2d 806, 106 S. Ct. 157, (1986).*

More recently, the Eleventh Circuit observed in Rooney v. Watson, *101 F. 3d 1378 (11th Cir. 1996)* " an inquiry into a governmental entity's custom or policy is only relevant when a constitutional deprivation has occurred." Rooney *at 1381.*

Returning to the essential threshold issue, the question is whether the failure to prevent the suicide of a person less than six hours after being brought to a jail without that person expressing suicidal ideation while detained, reflects a deliberate indifference to a suicide risk.

The burden is on the Plaintiff and "this is a difficult burden for the Plaintiff to meet". Popham v. City of Talladega, *908 F. 2d 1561 (11th Cir. 1990)* teaches that "the standard

requires a <u>strong</u> <u>likelihood</u> rather than a mere possibility that self-infliction of harm will occur and will not be found to exist in the face of negligence only". (*Emphasis added*). Also see <u>Edwards v. Gilbert</u>, *867 F. 2d 1271, (11th Cir. 1989)*, <u>State Bank of St. Charles v. Camic</u>, *712 F. 2d 1140, (7th Cir. 1983)*, <u>Stewart v. Love</u>, *696 F. 2d 43 (6th Cir. 1982)*. "The mere opportunity for suicide, without more, is clearly insufficient to impose liability on those charged with the care of prisoners." <u>Tittle v. Jefferson County Commissioners</u>, *10 F. 3d 1535, 1540 (11th Cir. 1994)*. To hold otherwise would be to impose a rule of absolute liability for the suicide of any person who succeeded in doing away with themselves who did not have a personal bodyguard 24 hours a day.

Undersigned counsel has been able to identify two cases from this federal circuit wherein an inmate suicide (<u>after</u> a reported verbal threat of suicide) led to attempts to impose liability for a constitutional tort..

In <u>Heggs v. Grant</u>, 73 F. 3d 317 (11th Cir. 1996), a woman was arrested for public drunkenness. During initial screening, Heggs gave mixed messages. Though she denied having suicidal tendencies, she threatened to kill herself when it came time to be placed in a cell. This comment went up the administrative chain. While how to respond was being considered, Heggs recanted. Ultimately, and without any evaluation by any mental health professional, Heggs was placed in a single cell and allowed to retain her clothing. She hung herself with her socks. In rejecting the civil rights claim at the dispositive motion stage, the court concluded that the constitution did not require Sheriff's officials to do anything more than they had done.

More recently, the Eleventh Circuit decided Cagle v. Southerland, 334 F. 3d 980 (11th Cir. 2003), which sprang from a suicide in the Warren County, Alabama Jail. The decedent was arrested and commented that his girlfriend recently killed herself at the Carbon Hill City Jail. This indirect but intuitive expression of suicidal thinking was reported directly to detention personnel by the arresting officer.

The decedent also claimed that he would kill himself if he stayed in jail all night. No mental health professional was consulted. Instead, the decedent was placed in a cell by himself, though a peephole between the cells allowed the inmates to monitor each other. The court concluded that, though the department was aware of a threat of suicide and did nothing to evaluate the risk posed by the threat, and placed the decedent in a one man cell without direct observation, this was an insufficient basis to infer the death resulted from deliberate indifference to a known serious threat of suicide. Final Judgment for the Defendants was entered.

Each of the fact patterns described above and determined not to violate constitutionally imposed duties were far more worthy of criticism than the actions of officials at the Gadsden County Sheriff's Office. This successful suicide attempt occurred without warning or notice. Plaintiff's decedent's actions in encouraging visitors to come visit and seeking food are counter-indicators of an intention to do harm. His entire period of detention was brief. McMillon's and McWhite's contact with him were only small portions of that small time he was detained there. Deputy McWhite undertook heroic efforts to preserve the life she is accused, appallingly, of

having been deliberately indifferent to. The Defendants are each entitled to Summary Final Judgment on Count I and, accordingly, each so moves.

## STATE LAW CLAIMS
### (COUNT III NEGLIGENT TRAINING AND SUPERVISION)

Plaintiff claims Sheriff Young breached a duty to train and supervise which purportedly was the proximate cause of Mr. Kinsaul's death (Please see ¶¶s 44, 45 and 46 of the Complaint). Young raised key affirmative defenses which focused on Count III:

### FIFTH AFFIRMATIVE DEFENSE

*"As a Fifth and separate Affirmative Defense, Defendant Young is sovereignly immune from liability as to all allegations concerning negligence in the hiring, training, supervision, discipline, or overall operations of the Gadsden County Sheriff's Office because such activities are reflective of discretionary policy making activity and cannot form the basis for the imposition of liability in tort against a political subdivision of the State of Florida."*

Sheriff Young's training and supervision protocols and practices concerning suicide prevention are not a basis for imposing tort liability. In Cook v. Sheriff of Monroe County, 402 F.3d 1092 (11th Cir. 2005), a Plaintiff brought a negligent training and supervision claim, along with a constitutional claim against Sheriff Roth of Monroe County, Florida after a pre-trial detainee successfully committed suicide three days following his arrest and two days after he requested to see a psychologist. Plaintiff's expert criticized Sheriff Roth's suicide prevention training procedures as being unclear and inadequate, that the Sheriff failed to conduct a necessary, mental health and suicide assessment and, among others, that the supervision deployed was "grossly insufficient to prevent jail hangings."

9

Deciding that to permit actionability for claimed shortcomings in training or supervision "would amount to judicial intervention, by way of tort law, into the fundamental decision making of the legislative and executive branches", the court rejected this theory of liability. Cook, at 1118.

## COUNT I
## NEGLIGENCE

The Sheriff raised as his first affirmative defense to the claim that Young is responsible for the negligent acts of his employees the following:

### FIRST AFFIRMATIVE DEFENSE

*"As a First Affirmative Defense, Defendant Young did not cause the death of James Michael Kinsaul in that his death was by suicide and it was an intervening, superceding cause which was, as a matter of law, not legally foreseeable."*

Florida's District Courts of Appeal have had the opportunity to consider these issues in the context of jail suicides in the past. First, in Guice v. Enfinger, *389 So 2d 270 (1st DCA, 1980)*, the District Court concluded that a prisoner suicide by hanging was not caused by the Sheriff of Santa Rosa County though, on the night of the arrest, jailors failed to remove the belt of an intoxicated arrestee. He was placed in a single cell, and checked on periodically. The trial court's determination that the suicide was an independent intervening cause was affirmed because under the circumstances where the decedent had not threatened or attempted suicide in the past, had demonstrated no overt suicidal tendencies, and circumstances indicated an expedited release, the death was not legally foreseeable. The court framed the relevant test thusly:

10

> *"When the loss is not a direct result of the negligent act complained of... but is merely a possible, as distinguished from a natural and probable result of the negligence, recovery will not be allowed.... Possible consequences are those which happen so infrequently from the commission of a particular act, that in the field of human experience they are not expected as likely to happen again from the commission of the same act."*

In contrast, on distinguishable facts, the Fourth District rejected summary judgment for the Sheriff on a jail suicide concluding that the death was foreseeable. In <u>Overby v. Wille</u>, 411 So 2d 1331 (4th DCA 1982), the decedent hung himself within 24 hours of arrest. He had a long psychiatric history unknown to those in the jail, but he acted sufficiently strangely for them to classify him as a "Signal 20". The District Court concluded that the presence of this abnormal behavior so close to the fatality made the death foreseeable and was therefore not independent in a legal sense.

This case is more akin to <u>Guice</u> than <u>Overby</u>. Stepping over the substantial threshold question of what thing it is that the Sheriff's personnel did do that they should not have done, or failed to do that they should have done, we move directly to the question of causation/foreseeability.

This case is like <u>Guice</u> and not like <u>Overby</u>. This Plaintiff had only been at the jail for less than six hours. He made no threat of suicide, nor did he threaten self harm. He was arrested for a minor offense and was thought likely to soon be released. He expressed interest in food and made telephone calls on which he was overheard to encourage visitation. There is nothing in this fact pattern to make any defendant liable for Kinsaul's spontaneous but determined effort to end his life.

## CONCLUSION

Defendant Sheriff Young moves for Summary Final Judgment on all counts. Should the court grant summary judgment on Count II, the constitutional claims, but deny it as to claims arising under state law, in that there will no longer be an independent basis for the exercise of federal jurisdiction, Young moves that the court dismiss the remainder of the suit pursuant to Title 28 U.S.C. §1367(c)(3). McMillon and McWhite, Defendants only in Count II, move for the entry of Summary Final Judgment that neither McMillon's actions in the last hour of his shift nor McWhite's actions were of constitutional dimension and were qualifiedly immune from suit.

Respectfully submitted,

*/s/ JOHN W. JOLLY, JR.*
JOHN W. JOLLY, JR.
Florida Bar No. 291961
JOLLY & PETERSON, P.A.
Post Office Box 37400
Tallahassee, Florida 32315
Tel:   (850) 422-0282
Fax:   (850) 422-1913

*Attorney for Defendants*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing document was furnished by CM/ECF Service only to Marie Mattox, 310 East Bradford Road, Tallahassee, Florida 32303, this ___5TH___ day of March, 2009.

/s/ *JOHN W. JOLLY, JR.*
JOHN W. JOLLY, JR.