**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

ZACHARIAH KINSAUL and                                    CASE NO. 4:08cv159-SPM/WCS
ALETA KINSAUL, in their
capacity as co-Personal
Representatives of the Estate of
JAMES MICHAEL KINSAUL,

       Plaintiffs,

v.

MORRIS YOUNG, in his official
capacity as SHERIFF, GADSDEN COUNTY,
FLORIDA, ERIC MCMILLON, individually,
and JOZELL MCWHITE, individually,

       Defendants.

_____/

**PLAINTIFFS'  MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT**

       Plaintiffs, ZACHARIAH KINSAUL and ALETA KINSAUL,  through their counsel, file

their response in opposition to Defendants' Motion for Summary Judgment as follows:

**I.    STANDARD OF REVIEW**

       To successfully win this Motion for Summary Judgment, Defendants must show that

"everything in the record . . . demonstrates that no genuine issue of material fact exists." Tippens

v. Celotex Corp., 805 F.2d 949, 952 (11th Cir. 1986).  Genuine issues of fact are those where the

evidence is such that a reasonable jury could return a verdict for the non-movant.  See e.g.

Anderson v. Liberty Lobby, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).  In

deciding whether a genuine issue of material fact exists, the Court must accept the truth of

Plaintiff's allegations and evidence and "must draw all reasonable inferences in Plaintiff's favor." Cottrell v. Caldwell, 85 F.3d 1480, 1486 n.3 (11th Cir. 1996).

In Wright v. Southland Corporation, 187 F.3d 1287, 1305 (11th Cir. 1999), the Eleventh Circuit overturned a grant of summary judgment against the plaintiff, emphasizing that credibility determinations, such as believability of witnesses, "can be made only after trial," and not on a motion for summary judgment.  In Damon v. Fleming Supermarkets of Florida, Inc., 196 F.3d 1354, 1361 (11th Cir. 1999), the Court again emphasized that "in the summary judgment context. . . [the court] must avoid weighing conflicting evidence or making credibility determinations."

Similarly, in Graham v. State Farm Mutual Insurance Co., 193 F.3d 1274, 1282 (11th Cir. 1999), the Eleventh Circuit stated, "credibility determinations, the weighting of evidence, and the drawing of inferences from the facts are the function of the jury . . ." See also Hilburn v. Murata Electronics North America, Inc., 181 F.3d 1220 (11th Cir. 1999)(on a motion for summary judgment, the court must "avoid weighing conflicting evidence and making credibility determinations", citing Hairston v. Gainesville Sun Publishing Co., 9 F.3d 913, 919 (11th Cir. 1994)).  "[F]actual disputes that are *material* preclude entry of summary judgment."  Stephens v. City of Butler, Alabama, et al., 2007 WL 1834898 (S.D. Ala.); Pearson v. Byrd, 2007 WL 1321970 (M.D. Ala. 2007)(the disputed issues of fact prevent the court from determining whether the defendants are protected by qualified immunity).

Based on the record evidence presented in this case, the Defendants' Motion for Summary Judgment should be denied.

### III.  FEDERAL CIVIL RIGHTS CLAIMS (COUNT II)

**A.  PLAINTIFF'S CLAIMS IN THIS CASE**

Plaintiffs concede that they cannot meet the standard required to prove liability under 42 U.S.C. §1983 for the individually named Defendants, McWhite and McMillon.  Plaintiffs disagree with Defendant on the official capacity claim against the Defendant Sheriff and have shown below that summary judgment should not be granted on that claim.

James Michael Kinsaul, the decedent, was a pretrial detainee, and as such, "[t]he constitutional rights of a pretrial detainee . . . flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment."[1] Hare v. City of Corith, Miss., 74 F. 3d 633, 639 (5th Cir. 1996)(citing Bell v. Wolfish, 441 U.S. 520, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979)); see also Lancaster v. Monroe County, 116 F. 3d 1419, 1425 n. 6 (11th Cir. 1997)(pretrial detainee cases are covered by the Fourteenth Amendment).  Prisoners have a constitutional right "to be protected from self destructive tendencies," including suicide.  See Hall v. Ryan, 957 F.2d 402, 406 (7th Cir. 1992).  Inmates also have an equal right to medical care for physical as well as mental illness.  See Riddle v. Mondragon, 83 F. 3d 1197, 1202 (10th Cir. 1996)("The states have a constitutional duty to provide necessary medical care to their inmates, including psychological or psychiatric care.").  There is no distinction "between the right to medical care for physical ills

---

[1]      Whether this case is brought under the Eighth or Fourteenth Amendment is unimportant, however, because the Eleventh Circuit has said that "the minimum standard for providing medical care to a pre-trial detainee under the Fourteenth Amendment is the same as the minimum standard required by the Eighth Amendment for a convicted prisoner."  Lancaster, 116 F. 3d at 1425.

and its psychological or psychiatric counterpart." Torraco v. Maloney, 923 F. 2d 231, 234 (1st Cir. 1991); see also Gibson v. County of Washoe, 290 F. 3d 1175, 1187 (9th Cir. 2002)("[T]he duty to provide medical care encompasses detainees' psychiatric needs" and recognizing that jail administrators must "deal safely and effectively with the special challenges posed by the mentally ill," including provision of adequate mental health screening at intake).

To prove municipal liability in this cases, there is no subjective component and the Plaintiffs need only show an objective risk of injury and a failure to train. City of Canton v. Harris, 489 U.S. 378, 109 S. Ct. 1197, 103 L.Ed.2d 412 (1989). "Unlike the deliberate indifference standards used to determine [officer liability] this standard [for municipal liability] does not contain a subjective component."[2] Gibson v. County of Washoe, 290 F. 3d at 1195); see also Farmer, 511 U.S. at 841 (distinguishing Canton's objective standard from the subjective standard applicable in individual liability cases).[3]

Deliberate indifference can be manifested by prison officials by intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Estelle v. Gamble, 429 U.S. 97, 104-105, 97 S. Ct. 285, 50 L.Ed.2d 251 (1976). Deliberate

---

[2]      The deliberate indifference standard for individuals is the same standard to be applied to a county on the Plaintiffs' denial of medical care and the failure to protect/train claims. The standard is, however, applied differently to governmental entities in two significant ways. First, the causation standard for governmental entities is articulated differently. Second, as applied to an individual, Farmer instructs that the deliberate indifference standard is a subjective standard requiring actual knowledge of a risk by the official. In the governmental liability context, deliberate indifference is an objective standard which is satisfied if the risk is so obvious that the governmental entity should have known of it. Barney v. Pulsipher, 143 F. 3d 1299, 1308 n. 5 (10th Cir. 1998); Farmer, 511 U.S. at 840-42 (discussing Canton).

[3]      The objective component is met if the deprivation is "sufficiently serious." Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 F. Ed. 2d 811 (1994).

indifference is also shown when prison officials place inmates in a condition likely to cause a serious health problem in the future.  See Helling v. McKinney, 509 U.S. 25, 32-33, 114 S. Ct. 2475, 125 L.Ed.2d 22 (1993)(holding that prison officials violate the Eighth Amendment when they expose a non-smoking inmate to a considerable amount of second-hand smoke, given the health risks of doing so); Hunt v. Uphoff, 199 F. 3d 1220, 1224 (10th Cir. 1999)("the Eighth Amendment also protects against future harm to an inmate.")  In Farmer v. Brennan, the Supreme Court applied this principle and held that prison officials have a duty under the Eighth Amendment to take reasonable precautions to protect an inmate from future assault by other inmates.  See also Ramos v. Lamm, 639 F. 2d 559, 575 (10th Cir. 1980)(applying Farmer and holding that prison administrators had insufficiently trained staff to protect inmates from future assault).

To satisfy the objective component, an inmate must show from objective facts that he is "incarcerated under conditions posing a substantial risk of serious harm."  Farmer, 511 U.S. at 834.  A serious medical need may include one that requires preemptive care in order to protect an inmate against a future risk.  See Helling, 509 U.S. at 32-33.  Deliberate indifference rests "somewhere between the poles of negligence at the one end and purpose or knowledge at the other."  Farmer, 511 U.S. at 836.  But deliberate indifference "does not require a finding of express intent to harm."  Mitchell v. Maynard, 80 F. 3d 1433, 1443 (10th Cir. 1996). Significantly, this level of intent can be proven through circumstantial evidence:

> "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious."

Farmer, 511 U.S. at 843.

Farmer holds that an Eighth Amendment inmate need only show that the risk of injury

was obvious and does not need to show that the defendant wanted the inmate to be injured by the

dangerous condition.  "[A] prison official [may not] escape liability for deliberate indifference by

showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not

know that the complainant" was likely to become a victim.  Farmer, 511 U.S. at 843.

Kinsaul committed suicide.  Plaintiffs have proven that there was  a policy by Defendant

Sheriff of not training his employees on suicide detection or prevention.  [Plaintiff's Statement of

Facts, ¶ 44].[4]  "Jail managers who decide to take no precautions against the possibility of inmate

suicide- to have no policy, for example no suicide watch option- are guilty of deliberate

indifference in the relevant sense, Manarite v. City of Springfield, 957 F. 2d 953, 957 (1st Cir.

1992); Greason v. Kemp, 891 F. 2d 829, 839 (11th Cir. 1990), they would be ignoring a known

and serious risk of death of persons under their control for whose safety they are responsible."

Boncher v. Brown County, 272 F. 3d 484, 486 (7th Cir. 2001).

Defendant in the instant case maintained a policy to have no policy to protect against

inmate suicide which resulted in Kinsaul's death.  The ramifications of this policy were enhanced

when the Defendant routinely failed to book inmates when they first arrived at the jail [Plaintiff's

Statement of Facts, ¶ 4] and allowed them to be placed in cells, including isolation cells, with

tools to commit suicide.  The protection of inmates from themselves was one reason for

Defendant's policy of not allowing belts in cells with inmates. [Plaintiff's Statement of Facts, ¶s

---

[4]        The failure of a governmental entity to have adequate suicide prevention policies
in place is appropriately analyzed under the failure to train standard set forth in Canton.  See
Liebe v. Norton, 157 F. 3d 575 (8th Cir. 1998).

5, 6, footnote 4].  If an official is aware of a substantial risk and "disregards the risk by failing to take reasonable measures to abate it", the trier of fact may infer deliberate indifference.  Id. at 846.

### B.    DEFENDANT SHERIFF'S LIABILITY

Defendant Young can be found liable under §1983 if Plaintiffs establish that Kinsaul's death was the result of: (1) Defendant's policies or customs or (2) Defendant's final policymaker(s) acted with deliberate indifference to a constitutional deprivation, or (3) Defendant's final policymaker(s) delegated authority to a subordinate who, in turn, caused a constitutional deprivation, or (4) Defendant's final policymakers ratified a constitutionally impermissible decision or recommendation of a subordinate employee.  Sherrod v. Palm Beach County School District, 424 F.Supp.2d 1341, 1344 (S.D. Fla. 2006).

### 1.    Failure to Train

Inmate suicide implicates both the state's duty to provide medical care and its duty to provide protection from harm, albeit self-inflicted.  See Hare, 74 F. 3d at 644. Defendant Sheriff and Major James Morgan, a chief policy maker by designation [Plaintiff's Statement of Facts, footnote 20], were the people exclusively responsible under Florida law for the management and administration of the Gadsden County Jail.[5]  Consequently, they have a federal duty to provide proper supervision over and to adequately train staff regarding inmate health and safety.  See Farmer, 511 U.S. 825.  Prison officials have a duty to "take reasonable measures to guarantee the safety of the inmates."  Farmer, 511 U.S. at 832 (quoting Hudson v. Palmer, 468 U.S. 517, 526-

---

[5]     In Florida, the Sheriff is the policymaker and final authority for his agency. Johnson v. Cannon, 947 F. Supp. 1567, 1571 (M.D. Fla. 1996)(citing Lucas v. O'Loughlin, 831 F. 2d 232, 235 (11th Cir. 1987)).

27, 104 S. Ct. 3194, 82 L.Ed.2d 393 (1984). This includes supervision and training of detention

officials who have a daily and direct impact on inmate health and safety. See Skinner v. Uphoff,

234 F.Supp.2d 1208, 1215 (D. Wyo. 2002)(holding that prison officials who had "consistently

ignored their responsibility to supervise and train their staff" in protecting inmate safety violated

the Eighth Amendment".)

      A §1983 action against a Sheriff's Department may be premised on inadequate training

See Hood v. Itawaamba County, 819 F. Supp. 556, 561 (N.D. Miss. 1993), or the failure to adopt

a policy.  Rhyne v. Henderson County, 973 F. 2d 386, 392 (5th Cir. 1992).  "In other words, the

lack of formal policies may state a valid section 1983 claim." Thornhill v. Breazeale, 88

F.Supp.2d 647, (S.D. Miss. 2000)(genuine issue of material fact existed as to whether county

jail's lack of written policy relating to administering of CPR to detainees who attempted suicide,

and presence of cell with non-breakaway shower rod were reasonably related to legitimate

government interests, precluding summary judgment in survivors §1983 claim against county and

officials alleging due process violations based on detainee's suicide).

      Plaintiffs have proven in this case a custom and policy of inadequate training,

supervision, and discipline on the part of the Gadsden County Sheriff which led to the

constitutional deprivations visited upon the Plaintiffs' decedent.  To establish a claim under

§1983 against the Sheriff, the Plaintiffs must establish that (1) Kinsaul was deprived of a

constitutionally protected right, and (2) that a governmental policy or custom was the moving

force behind the constitutional violation.  Monell v. Dept. of Social Services, 436 U.S. 658, 694,

98 S. Ct. 2018, 56 L.Ed.2d 611 (1978); City of Canton, 489 U.S. at 385.  This includes customs

and usages which have become so persistent and widespread as to be permanent and well settled

so as to constitute a custom or usage with a force of law. Id. at 691.

To support a failure to train claim, a plaintiff must show that any failure to train by the governmental entity reflects a deliberate or conscious choice to endanger constitutional rights. City of Canton Ohio v. Harris, 489 U.S. 378, 109 S. Ct. 1197, 103 L.Ed.2d 412 (1989). An adequate training program must "enable officers to respond properly to the usual and recurring situations with which they must deal." Brumfield v. Bryant, 2007 WL 2484952 at *4 (S.D. Miss. 2007).

In this instant case, there was a custom of no training on suicide detection on August 5, 2006 when James Michael Kinsaul was brought to the Gadsden County Jail. He had multiple prior Baker and/or Myer's Act commitments and had expressed the desire to commit suicide the year before he was taken to Defendant's jail. [Plaintiff's Statement of Facts, ¶ 49]. Defendant never ran his information on FCIC to determine his past criminal record and never completed a medical assessment form to determine if he was ill. Defendant did nothing to determine if Kinsaul was in need of medical treatment for a psychiatric condition and did nothing to determine if he was suicidal. Instead, Defendant created the "perfect storm" for Kinsaul in that he was in an unmonitored isolation cell without cell mates with a convenient and inviting tool for committing suicide- his belt.

In certain circumstances, deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a "highly predictable" or "plainly obvious" consequence of a governmental entity's action or inaction, such as when a governmental entity fails to train an employee in specific skills needed to handle recurring situations, thus presenting an obvious potential for constitutional violations. Board of County

9

Commissioners v. Brown, 520 U.S. 397, 409-410, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997);

Canton, 489 U.S. at 390 & n. 10.  With no training on the detection and identification of suicidal

inmates, Plaintiffs have shown by objective facts that Kinsaul was incarcerated under conditions

posing a substantial risk of serious harm.  The systemic deficiencies in this regard demonstrate

that the Defendant Sheriff is deliberately indifferent to inmate medical needs.  The Defendant

Sheriff had inadequate policies for medical screening and no policies on the detection and

prevention of suicide and Kinsaul is dead as a result.  Defendant Sheriff has also inadequately

supervised and improperly trained staff regarding inmate medical/mental health needs in

violation of Kinsaul's Fourteenth Amendment rights.  These deficiencies exposed Kinsaul, who

was incarcerated in the Gadsden County Jail, to substantial risk of harm and demonstrates

deliberate indifference on the part of the Sheriff to Kinsaul's Fourteenth Amendment Rights.

Genuine issues of material fact exist when a sheriff, as policymaker for the county, also

adopts a custom of allowing correctional officers complete discretion in how to run the day to

day operations of a jail.  Brumfield, 2007 WL 2484952 at * 6.  The court in Brumfield denied

summary judgment when the jail practiced customs of deliberate indifference toward inmates by

granting jailers discretion in determining whether or not to remove inmates' shoelaces, to check

on the inmates in certain time intervals, or to affirmatively inquire into inmate's medical state.

Id.

Defendant adopted a custom and practice of not booking inmates and not conducting

medical or suicide assessments on inmates.  At the expense of inmate safety, Defendant Young

left jail employees to their own devices to improvise in the performance of their duties.  This

policy of inadequate training is material to the determination of whether the policy was the

moving force behind the constitutional violation. <u>See</u> <u>Bechtold v. Stearns County, MN</u>, 2007 WL 2892568 at *7 (D.Minn. 2007)(summary judgment denied when jail officials never received suicide prevention training).

A fact-finder may conclude that a defendant knew of a substantial risk of harm to an inmate from the very fact that the risk was obvious. <u>Farmer v. Brennan</u>, 511 U.S. 825, 842, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Defendant is deliberately indifferent to the needs of intoxicated pretrial detainees when it failed to take inexpensive measures to prevent jail suicides. <u>See</u> <u>Simmons v. City of Philadelphia</u>, 947 F.2d 1042, 1071-75 (3rd Cir. 1991)(sufficient evidence existed to support jury conclusion that the city's deliberate indifference to the serious medical needs of intoxicated detainees, as <u>Monell</u> requires, was the "moving force" behind a violation of inmate Fourteenth Amendment rights, even where policy required removal of inmate belts, placing detainees together in cells, and inmate checks every fifteen minutes); <u>Thornhill</u>, 88 F.Supp.2d at 652 (genuine issue of material fact found where jail had no written policies for the detection and prevention of suicide and where plaintiff was housed in cell with a non-breakaway shower rod); <u>Terry v. Rice</u>, 2003 WL 1921818 at * 23 (S.D. Ind. 2003)(summary judgment denied when de facto suicide watch policies "were so inadequate as to amount to deliberate indifference").

Genuine issues of material fact remain that could lead a reasonable jury to conclude that Defendant violated Kinsaul's constitutional rights through its deliberate indifference to his medical needs and safety. Defendant engaged in a custom and practice that was wholly inadequate to prevent suicides of jail inmates. Defendant Sheriff's failure to train his jail personnel caused the correctional officers to fail to book Kinsaul into the jail, to assess him for

11

suicidal tendencies, to remove his belt, and to properly observe him while in custody.

     2.    <u>Ratification</u>

     Without question, Sheriff Young and Major Morgan have final policy making authority. Sheriff and Major Morgan ratified the actions and inactions of McMillon and McWhite.  One method of attributing conduct to the governmental entity is for a plaintiff to show that the policy maker was aware of the subordinates' unconstitutional actions and consciously chose to ignore them. <u>Amnesty Am. v. Town of West Hartford</u>, 361 F.3d 113, 126 (2d Cir. 2005) (citing <u>Sorlucco v. New York Cit Police Dep't.</u>, 971 F.2d 864, 870-71 (2d Cir. 1992)(stating that municipal liability lies where the subordinate's misconduct is "so manifest as to imply the constructive acquiescence of senior policy-making officials").  Where a policy-making official exhibits deliberate indifference to constitutional deprivations caused by subordinates, such that the official's inaction constitutes a "deliberate choice," that acquiescence may "be properly thought of as a city 'policy or custom' that is actionable under § 1983." <u>City of Canton, Ohio v. Harris</u>, 489 U.S. 378, 388, 109 S.Ct.1197, 103 L.Ed.2d 412 (1989); <u>see also</u> <u>Vann v. City of New York</u>, 72 F.3d 1040, 1049 (2d Cir. 1995), <u>Jeffes v. Barnes</u>, 208 F.3d 49, 63 (2d Cir. 2000)(holding that sheriff's acquiescence in unconstitutional retaliation could be inferred from his  tolerance of harassment of plaintiffs).

     A governmental entity may be held liable under §1983 where the responsible law enforcement officer has "ratified" unconstitutional conduct by failing to investigate a citizen's complaints of constitutional violations.  <u>See</u> <u>Kimbrough v. City of Cocoa</u>, 2006 WL 3335066, * 7 (M.D. Fla. 2007)(citing <u>Marchese v Lucas</u>, 758 F.2d 181, 187-88 (6th Cir. 1985)(court regarded the "official policy" of the sheriff and the county as ratification of an assault by officers upon a prisoner where sheriff did not engender *serious* investigation to discover the perpetrators or official sanction

against their conduct)).

Thus, under the ratification theory, a sheriff's department's failure to investigate may be indicative of an official policy. Put another way, failing to investigate a claim of a constitutional deprivation like that alleged here, i.e., the deprivation of medical care and suicide detection, may permit an inference that the misconduct which injured the decedent was pursuant to an official policy or custom. See Bordanaro v. McLeod, 871 F.2d 1151, 1166-1167 (1st Cir. 1989); see also Watkins v. City of Oakland, California, 145 F.3d 1087 (9th Cir. 1998)(Chief of Police held individually liable on a supervisory theory of liability for ratifying police officer's alleged use of excessive force when he dismissed complaint against the officer despite evidence of constitutional violation); Larez v . City of Los Angeles, 946 F.2d 630, 645 (9th Cir. 1991)(upheld a jury verdict finding police chief liable for ratifying the excessive use of force by officers under his command by signing a letter denying citizen's complaint when expert testimony showed that he should have disciplined the officers); St. Louis v. Praprotnik, 485 U.S. 112, 127, 108 S. Ct. 915, 99 L.Ed.2d 107 (U.S. 1988)(". . . when a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with *their* policies. If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality. . ..")

In the instant case, Defendant Sheriff did not conduct any investigation into the actions of McWhite and McMillon. In fact, the Sheriff and Morgan intentionally remained blind in spite of overwhelming evidence of policy violations, coverups and outright lies. Pretending to conduct a full investigation is like telling half of the truth. A half truth is a full lie.

The Eleventh Circuit has explicitly recognized and approved the ratification method of

13

proving official capacity claims under § 1983 in <u>Mandel v. Doe</u>, 888 F. 2d 783 (11th Cir. 1989).  The Court in <u>Mandel</u> recognized the ratification method of proving custom or policy: "the delegation of final policymaking authority from one official to another and the ratification of a subordinate's actions by a final policymaker."  <u>Id.</u> (citing <u>City of Oklahoma v. Tuttle</u>, 471 U.S. 808, 834, 105 S.Ct. 2427, 2441, 85 L.Ed.2d 791 (1985)(Brennan, J., concurring in part and concurring in the judgment)("there may be many ways of proving the existence of a municipal policy or custom that can cause a deprivation of a constitutional right.").

The court in <u>Mandel</u> also discussed a number of Supreme Court cases in which alternative theories were addressed holding local governments liable under § 1983 for a single decision by a government policymaker.  For example, in <u>Pembaur v. City of Cincinatti</u>, 475 U.S. 469 , 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), the court upheld a finding of municipal liability based on a single decision by a municipal policymaker.  And in <u>City of St. Louis v. Praprotnik</u>, 485 U.S. 112, 108 S. Ct. 915, 99 L.Ed.2d 107 (1988), in an effort to clarify when a decision on a single occasion may be enough to establish an unconstitutional municipal policy, the Court reasoned that "[i]f the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality . . ."  108 S. Ct. at 926.

Based on <u>Praprotnik</u> and <u>Pembaur</u>, "municipal liability may attach to a single decision made by a municipal official if that municipal official is the final policymaker for the municipality with respect to the subject matter in question." <u>Mandel</u>, 888 F.2d at 793. In <u>Mandel</u>, the court found that a physician's assistant was the final policymaker for the defendant with respect to the medical affairs of a road prison. <u>Id.</u> at 794.   Because he had been delegated this final policymaking authority, his acts of deliberate indifference could be attributed to the defendant to establish municipal liability.

14

Id.  Liability was found in Mandel even though there was only one incident to support the existence

of a governmental policy or custom **because** of the delegation of final policymaking authority from

one official to another and the ratification of a subordinate's action by a final policymaker.  Id. at

791. Thus, a single instance of deliberate indifference to subordinates' actions can provide a basis

for municipal liability.  See Mandel, 888 F.2d at 791.

In Kimbrough, the Court found that the City's failure to investigate or to discipline the

conduct of its officers could support a claim of ratification.  2006 WL 3335066 at *8.  The Court

held that the fact that no one was investigated nor reprimanded could be found to be evidence that

the City sanctioned the officer's conduct and the reasons behind their actions.  Id.  In Marchese v.

Lucas, 758 F. 2d 181, 188 (6th Cir. 1985), the court concluded that where, after an assault on a

prisoner, there was no serious investigation to discover the perpetrators or official sanctions against

their conduct, there was ratification of the illegal acts by the Sheriff.  And in Amnesty Am. v. Town

of West Hartford, 361 F. 3d at 126-27, the could held that because a single action on the part of a

policymaker was sufficient to create a municipal policy, then a single instance of deliberate

indifference to subordinates' actions can provide a basis for municipal liability.

In the instance case, the Sheriff and Major Morgan, both policymaking officials, were aware

of their subordinate's actions and consciously chose to ignore them, effectively ratifying their

actions.  They knew that neither McMillon nor McWhite performed a suicide assessment of Kinsaul.

They did no investigation, however, to ever confirm any level of wrongdoing notwithstanding the

fact that Defendant's policies required an Internal Affairs investigation. [Plaintiff's Statement of

Facts, ¶ 34].  They knew that there were policy violations and refused to discipline both McMillon

and McWhite for their transgressions. Under these circumstances, there was ratification and liability

15

should attach to the Sheriff.

## IV.  NEGLIGENCE- COUNT I

A sheriff is charged with a higher degree of care for a prisoner's safety and protection when he is aware that a prisoner is intoxicated.  Manual v. City of Jeanerette, 702 So.2d 709, 712 (La.App. 3 Cir. 1997). Kinsaul was intoxicated on August 5, 2006.   Defendant Sheriff breached his nondelagable duty of care in numerous ways.   Defendant was negligent through a total failure to enforce policies pertaining to the removal of inmate belts, and  through a failure to properly train his correctional officers in existing policies aimed at the safe pretrial detention of inmates.   Defendant Sheriff was negligent in the failure to conduct a medical assessment of the Plaintiff and in failing to take his belt, both of which were violations of the Defendant's policies. [Plaintiff's Statement of Facts, ¶s 1, 2, 3].

On Plaintiff's negligence claims, the initial question is whether the Defendant owed Kinsaul a duty of care.  City of Pinellas Park v. Brown, 604 So. 2d 1222 (Fla. 1992); see also Lewis v. City of St. Petersburg, 260 F. 3d 1260 (11th Cir. 2001)("To state a claim for negligence under Florida law, a plaintiff must allege that the defendant owed the plaintiff a duty of care, that the defendant breached that duty, and that the breach caused the plaintiff to suffer damages.").  The issue of duty is an question of law. McCain v. Florida Power Corp., 593 So.2d 500, 503 (Fla.1992).

A duty of care has been established in circumstances like those presented *sub judice* when there is a "special relationship" existing between the individual and the governmental entity and/or the harm is within a "foreseeable zone of risk."  Both a special relationship and a foreseeable zone of risk have been proven here.

16

## A.  THE "SPECIAL RELATIONSHIP" TEST IS MET HERE

In <u>Everton v. Willard</u>, 468 So. 2d 936 (Fla. 1985), the court recognized that while a police officer engaged in making arrests and enforcing the law will not ordinarily owe a duty of care to any particular member of the public, if a special relationship exists between an individual and a governmental entity engaged in a public function, there may be a duty of care owed to the individual.[6]  The existence of special relationships or public policy considerations have also given  rise to non-delegable duties. <u>See</u> <u>Sammons v. Broward Bank</u>, 599 So.2d 1018, 1020 (Fla. 4th DCA 1992); <u>Hinckley v. Palm Beach County Bd. of County Com'rs</u>801 So.2d 193, 196 (Fla. 4th DCA 2001)(when the County undertook to provide transportation services to a developmentally disabled person, it created a special relationship with her and a duty to protect her from foreseeable harm which is non-delegable).

This test is met when there is a "special relationship" between the defendant and the plaintiff, such that the plaintiff is entitled to protection.  Liability has been found in custodial relationships:  <u>Harris v. Monds</u>, 696 So. 2d 446, 446 (Fla. 4th DCA 1997)(stating that a prisoner who sustains injuries while incarcerated was owed a common-law duty of reasonable care based on the nature of the custodial relationship); <u>White v. Palm Beach County</u>, 404 So. 2d 123 (Fla. 4th DCA 1981)("finding liability for violence and sexual abuse suffered by inmates in jail"); <u>see also</u> <u>Henderson v. City of St. Petersburg</u>, 247 So. 2d 23 (Fla. 2d DCA 1971)("finding liability for injury to police informant after police knew he was in danger for cooperating with authorities").

In <u>Hartley v. Floyd</u>, 512 So.2d 1022 (Fla. 1st DCA 1987), the sheriff was held to be liable

---

[6]     In <u>Everton</u>, the Florida Supreme Court recognized that "if a special relationship exists between an individual and a governmental entity, there could be a duty of care owed to the individual."  468 So. 2d at 938.

when, at the request of a missing man's wife, a deputy agreed to do certain, specific tasks in an effort to locate the husband. The deputy did not perform any of the tasks as a consequence of which the husband died. The sheriff argued he could not be liable for a person's injuries unless he owed a special duty to a person beyond the general duty owed the public at large. The First District agreed that

> "... [w]hile this is a correct statement of law[,] it is not applicable to the facts in this case where[,] notwithstanding the absence of any preexisting special duty to Mrs. Floyd, the sheriff's office agreed to perform certain activities at her request. Once again, having assumed the undertaking[,] the sheriff's office had an obligation to carry it out with reasonable care. The sheriff's deputy negligently failed to perform the assumed responsibilities, and the sheriff can therefore be held liable for his negligence."

Id. at 1024.

Applying these legal principals to the instant case, the Defendant Sheriff cannot avoid liability because it had a special relationship with Kinsaul due to the fact that he was in its custody.

## B.  PLAINTIFF WAS WITHIN THE "FORESEEABLE ZONE OF RISK"

Kinsaul was incarcerated within the Defendant's Jail when he committed suicide. "Clearly, the sheriff and his [employees] owed the decedent the duty to use reasonable care for his safety while he was incarcerated." Hutchinson v. Miller, 548 So. 2d 883 (Fla. 5th DCA 1989). Under Kaisner v. Kolb, 543 So. 2d 732 (Fla. 1989), a duty of care was also owed to Kinsaul because he was within the "foreseeable zone of risk".

In Kaisner, the Florida Supreme Court determined that a county could be liable to a motorist who was pulled over by sheriff's deputies and was injured when he was hit by traffic while standing on the side of the road.  The court conducted a two part analysis in determining

18

the government's duty to the injured driver.  First, the court determined that the injured party was

in custody[7] and recognized that historically, a government has been held responsible if a party in

custody is injured as a result of governmental negligence.  Second, the court stated that "[w]here

a defendant's conduct creates a foreseeable zone of risk, the law generally will recognize a duty

placed upon defendant either to lessen the risk or see that sufficient precautions are taken to

protect others from the harm that the risk poses.  We see no reason why the same analysis should

not obtain in a case in which the zone of risk is created by the police." Id. at 735 (citations

omitted.)

Once Kinsaul was restrained of his liberty, he was in the "foreseeable zone of risk" and,

therefore, a duty of care was owed to him.  Id.; see also Moore v. FWCC, 861 S. 3d at 1253

(once the plaintiff was restrained of his liberty, he was in the "foreseeable zone of risk" described

in Kaisner. "Therefore a duty of care was owed to the appellant."); Mosby v. Harrell, 909 So. 2d

323, 327 (Fla. 1ˢᵗ DCA 2005)(discussing foreseeable zone of risk).  "[T]he trial and appellate

courts cannot find a lack of duty if a foreseeable zone of risk more likely than not was created by

the defendant." McCain, 593 So.2d at 503.

After Kaisner, the supreme court addressed legal duty in a case involving a non-

governmental defendant in McCain, 593 So. 2d 500.  In McCain, the court determined that a duty

---

[7]          In Kaisner, the Court concluded that "custody" should not be narrowly construed:

> "The term 'custody' is defined as the detainer of a man's person by virtue of lawful
> process or authority.  The term is very elastic and may mean actual imprisonment or
> *physical detention* or mere power, legal or physical, of imprisoning or of taking manual
> possession.  We thus conclude that 'custody' need not consist of the formal act of an
> arrest, but can include any detention."

Id. at 734 (emphasis in original; citation omitted).

is owed to all persons who are within a foreseeable zone of risk created by the tortfeasor's alleged wrongdoing.

      The foreseeable zone of risk test was subsequently embraced by the Florida Supreme Court again in City of Pinellas Park v. Brown, 604 So. 2d 1222 (Fla. 1992).  Utilizing the foreseeable zone of risk analysis of Kaisner and McCain, the court held that there was a duty to the innocent bystanders.  Id. at 1223, 1225-26, 1228; see also Henderson v. Bowden, 737 So.2d 532 (Fla.1999)(where a sheriff's deputy arrested a drunk driver and thereafter directed the driver's equally intoxicated passenger who was not in custody, to drive the vehicle to a nearby Circle K store to call his parents for a ride home, court imposed liability because the Sheriff's deputies had placed the passengers of the car in danger by directing an intoxicated person to drive, and that this direction, more likely than not, created a foreseeable zone of risk giving rise to a legal duty).

      As the risk grows, so too does the duty, because the risk to be perceived defines the duty of care to be undertaken. See City of Pinellas Park v. Brown, 604 So.2d 1222 (Fla.1992).  The risk in the instant case was placing Kinsaul into an isolated cell without any appreciable sight or sound monitoring with his belt, a convenient tool for suicide.  The risk was high and defines the duty that the Sheriff had to prevent Kinsaul's suicide.

      An inmate suicide is a foreseeable consequence of the nonexistent and lackluster policies and inadequate training described above and in Plaintiff's Statement of Facts.  As the court stated in Crislip v. Holland, 401 So.2d 1115 (Fla. 4th DCA 1981):

> In order for injuries to be a foreseeable consequence of a negligent act, it is not necessary that the initial tortfeasor be able to foresee the exact nature and extent of the injuries or the precise manner in which the injuries occur.  Rather, all that is necessary in order for liability to arise is that the tortfeasor be able to foresee that some injury will likely result in some manner as a consequence of his negligent acts. (citations omitted).

Id. at 1117; see also Leib v. City of Tampa, 326 So.2d 52 (Fla. 2d DCA 1976); Budet v. K-Mart

Corp. 491 So.2d 1248, 1251 (Fla. 2d DCA 1986).

A resulting harm need only be within the scope of danger created by the defendant's

negligent conduct to be reasonably foreseeable. Gibson v. Avis Rent-A-Car System, 386 So.2d

520 (Fla. 1980). If within the scope of danger created by the Defendant, summary judgment is

improper under the cases cited above. Importantly, the question of foreseeability and whether an

intervening cause is foreseeable is for the trier of fact. Id.

Despite the Defendant's attempt to distinguish Overby v. Wille, 411 S. 2d 1331 (Fla. 4th

DCA 1982), the facts are remarkably similar to those of the instant case. In Overby, the deceased

was placed into an isolation cell because of his belligerency and outward aggression. Id at 1332.

He was in his street clothes and had a belt that he ultimately used to commit suicide. Id. The

issue was whether the decedent's act of self-destruction was an independent intervening cause

which was not reasonably foreseeable. The trial court found as a matter of law that the question

should be answered in the affirmative and the Fourth District reversed. Id. "Only a total absence

of evidence to support an inference that the intervening cause was foreseeable justifies the court

in removing the question from the trier of fact." Id. The Court in Overby found that the question

was "whether the trier of fact could find, on the evidence and the permissible inferences to be

drawn from that evidence, that it was reasonably foreseeable that harm would befall to [the

deceased] either directly or indirectly as a result of the actions and omissions of the respective

defendants." Id. at 1333.

In the instant case, there is sufficient evidence of policy violations and lies to cover those

violations for a trier of fact to find that it was reasonably foreseeable that Kinsaul may commit

suicide if his belt was not removed.  Defendant Sheriff violated his own policies, as well as the

Florida Model Jail Standards, which the Sheriff adopted as his own. Courts have consistently

held that a violation of internal policy and procedure manuals or industry standards is evidence of

negligence.  See Marks v. Mandel, 477 So.2d 1036, 1039 (Fla. 3d DCA 1985)(trial court erred in

excluding from evidence hospital's emergency room policy and procedure manual as evidence of

a general industry custom or evidence that the defendant violated its own policy or an industry

standard); Clements v. Boca Aviation, Inc., 444 So.2d 597 (Fla. 4th DCA 1984);  Dean Witter

Reynolds, Inc v. Hammock, 489 So.2d 761, 767 (Fla. 1st DCA 1986)(evidence of violation of

brokerage firm's in-house regulations was admissible as evidence of negligence); St. Louis-San

Francisco Ry. Co. v. White, 369 So.2d 1007 (Fla. 1st DCA 1979)(violation of statute requiring

placing of crossbucks at all crossings was evidence of negligence); see also DeJesus v. Seaboard

Coast Line R. Co., 281 So.2d 198, 201 (Fla. 1973)(Court ruled that a violation of any statute

which establishes a duty to take precautions to protect a particular class of persons from a

particular type of injury is negligence per se).[8]

Significantly, had the belt removal policy at issue here been followed, Kinsaul would

likely be alive today.  These policies were designed to prevent the precise harm that occurred

here and Plaintiffs have offered evidence that it was reasonably foreseeable that death could

---

[8]     The fact that there were no policy violations in Guice v. Enfinger, 389 So.2d 270
(Fla. 1st DCA 1980), is one of several facts that distinguishes it from the instant case.  Another
distinguishing fact is that in Guice, the deceased was expected to bond out that day.  There is
quite a different situation *sub judice* where Kinsaul learned an hour or so before his death that he
had a "no bond" order and was not leaving the jail.  Unlike the facts in Guice, the record here
illustrates a stream of actions showing the inattention to Kinsaul and that his demise could likely
flow from learning that he was not getting out of jail.  Importantly, even though Grice has not
been overruled, the law in more recent years, outlined above, has developed more consistent with
the holding in Overby rather than Grice in the area of foreseeability.

result from a violation thereof.  Preventing self-inflicted harm was one reason that these policies

existed. [Plaintiff's Statement of Facts, footnote 4].

## V.  NEGLIGENT TRAINING AND SUPERVISION - COUNT III

Defendant claims that is has sovereign immunity for the claims in Count III.  However,

the law clearly shows that there is no legal barrier to making a claim against a governmental

agency for negligent supervision and training. Dickinson v. Gonzalez, 839 So. 2d 709, 713 (Fla.

3d DCA 2003); see also School Bd. of Orange County v. Coffey, 524 So.2d 1052, 1053 (Fla. 5th

DCA 1988); Mosby v. Harrell, 909 So.2d 323, 330 (Fla. 1st DCA 2005).  A negligent training and

supervision claim against a governmental entity is actionable when those charged with a duty of

care take no action to ensure the safety of those for whom it cares. See Slonin v. City of West

Palm Beach, Fla., 896 So.2d 882, 884 (Fla. 4th DCA 2005)(claim against defendant for negligent

supervision and retention was not barred by sovereign immunity).  Defendant Young breached

his duty to Kinsaul, an inmate, by failing to train and supervise his correctional officers on

suicide prevention and on the removal of dangerous instrumentalities, such as belts.

## CONCLUSION

For the reasons set forth above, summary judgment against the Defendant Sheriff should

be denied on all Counts.

Respectfully submitted,


/s/ Marie A. Mattox
Marie A. Mattox [FBN 0739685]
MARIE A. MATTOX, P.A.
310 East Bradford Road
Tallahassee, Florida 32303
(850) 383-4800 (telephone)
(850) 383-4801 (facsimile)

ATTORNEYS FOR PLAINTIFF

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished to all counsel of record by CM/ECF this 31st day of March, 2009.

/s/ Marie A. Mattox
Marie A. Mattox